Lee, J.
The first question that seems to require consideration in this case is, whether the Circuit court of Raleigh county had jurisdiction of the cause. It was a bill praying an injunction to a judgment of the Circuit court of Fayette county, upon the ground of payment or satisfaction by levy on sufficient property of the principal debtor, whilst a previous execution was in the hands of the sheriff of Fayette county. It did not call in question the equity of the judgment originally, but insisted that it was now inequitable that it should be further executed.
The solution of this question depends on the true construction of section fourth of ch. 179 of the Code, p. 677. This section provides, that “jurisdiction of a bill of injunction shall be in a Circuit, County or Corporation court of a county or corporation, in which the judgment is rendered, or the act or proceeding is to be done, or is doing, or apprehended, except that a County or Corporation court shall not award an injunction to a judgment or proceeding of any other court.” And as this was a bill seeking relief against a judgment of the Circuit court of Fayette county at *628 the suit of a defendant in the judgment, and praying an injunction to restrain the plaintiff and the sheriff from any further proceeding upon it on the execution sued out thereon, (though the latter was directed to and sought to be levied in Ealeigh county,) it would seem to be directly within the terms of the provision, and that the jurisdiction of the bill was in the Circuit court of Payette. But it is supposed there may be a distinction between the case of an injunction to a judgment for matter of equity existing anterior to the judgment, and for matter arising subsequently, sucli as payment or the like, which renders any further proceeding to enforce the judgment by execution improper and inequitable; and that in the latter case, if the execution be sent to a different county from that in which the judgment was rendered, and is about to be levied, the defendant may prosecute his bill for an injunction in the court of the county in which the levy is about to be made; the injunction in such case being not to the judgment, but to restrain an act or proceeding contrary to equity, about to be done in that county, within the meaning of the law. But I can perceive no good reason for any such distinction. It is in either case an injunction to the judgment; and in both, the relief is afforded by perpetually enjoining the judgment, in whole or in part, according to the nature of the case. In strictness, there is no such thing as an injunction to a judgment, because the court of chancery does not act upon the law court, and neither reverses, rescinds nor annuls the judgment. It acts upon the party only, restrains him from enforcing the judgment by execution, and punishes him as for a contempt for any violation of its mandate. Ashby v. Kiger, Gilm. 153. But in common legal parlance, and for the sake of brevity, its order in such a case is called an injunction to a judgment; and what is always meant is an injunction to proceedings on the *629 judgment; and such it will he seen is the language used in § 10, p. 678, and § 13, p. 679.
For the purpose of determining the court which shall have jurisdiction of a bill of injunction, and of ascertaining what shall be the condition of the injunction bond, and before what clerk it shall be given, the act in effect classifies injunctions under two heads. First, injunctions to judgments; second, other injunctions to independent or collateral acts or proceedings, having no relation to judgments, which are to be done or are doing or apprehended. See § 4 and § 10. Of the latter class are injunctions to stay waste, to prevent a nuisance, to arrest a sale improperly about to be made by a trustee, to restrain the doing of an unlawful aet prejudicial to the complainant, and for whieh, if done, he could have no adequate compensation in damage, and the numerous other matters having no reference to any previous judgment at law, whieh constitute the proper subjects of injunction; and these are plainly the matters contemplated by the act when it speaks of acts or proceedings about to be done or apprehended. In the latter cases, the jurisdiction is assigned to the courts of the county in which the act or proceeding is about to be done or is apprehended: the injunction bond is to be given before the court in which the injunction suit is instituted, and the condition of the bond is to be such as the court or judge awarding the injunction shall prescribe. In the former the jurisdiction is to be in the court of the eounty in whieh the judgment was rendered, the bond is to be given before the clerk of the court in whieh the judgment is, and it is to be with condition to pay the judgment (in case the injunction be dissolved) and all costs that may be awarded and all damages that shall be incurred, and with a further condition, if a forthcoming bond have been given, to indemnify the sureties in such forthcoming bond.
*630 To the case which has been suggested by way of illustration, a ready answer may be given. It is the case of a judgment in a particular county upon which an execution has been sued out, directed to the sheriff of a different county, and which the sheriff has undertaken to levy upon property; e. g. a slave, belonging to a third person, a citizen of the latter county, who is no party to the judgment, and who and whose property is in no manner bound by the judgment or the execution issued thereon. Can he not, it is asked, obtain an injunction and prosecute his suit in his own county to restrain the sheriff from illegally seizing and selling his property to pay another man’s debt ? Must he leave his own county and go with his suit to the court of the county where the judgment was rendered? The answer is that he may get his injunction and prosecute his suit in the county where he lives, and where the sheriff is about to seize and sell his property. But his injunction is not to the judgment; he does not call it in question for any matter either existing before or occurring since its rendition: he does not seek to stay it in any form, or to arrest its execution by a levy and sale of any property that maybe properly liable to it. As to him there is no judgment, no execution, and what he seeks is to protect his property • against the unlawful act of the sheriff who is about to seize it without shadow of authority. It is a collateral act or proceeding in pais that he seeks to enjoin, not the due and regular execution of the judgment against those liable to it. If the injunction be allowed, he is not required to give bond with condition to pay the judgment and costs and damages, and indemnify the surety in the forthcoming bond, if any; but the condition of his bond is such as the court or judge may prescribe; and he prosecutes his suit in the court of that county in which the unlawful act of the sheriff is about to be done.
*631 No doubt there may be cases in which the court of a particular county, having jurisdiction upon other grounds, may rightfully enjoin proceedings on a judgment of another county, where such a measure is appropriate to the relief proper to be administered in the cause; but where the sole ground of relief is the right to. enjoin proceedings on the judgment whether for a matter of equity existing anterior to its rendition or subsequently arising, and it is sought by a party who or whose property is liable to execution upon it, I think it clear the case is one of an injunction to the judgment, within the meaning of the act, and that the jurisdiction of the suit is in the courts of the county in which the judgment was rendered; and that a court of another county to which the execution might chance to be sent, and in which it was levied on property of a defendant, has for that cause no right to entertain jurisdiction of the case.
I think the right to object to the jurisdiction was not lost to the defendants by their failing to plead to the jurisdiction, and that the case is not within § 19 of ch. 171 of the Code, p. 648. That section provides that where a bill shows on its face proper matter for the jurisdiction of the court, no exception for want of such jurisdiction shall be allowed, unless taken by plea in abatement, which shall not be received after answer filed, &c. Here the objection is not for want of matter proper for the jurisdiction of a court of equity, but because the jurisdiction in the case is expressly assigned to another court, because the court of Raleigh was usurping a jurisdiction pertaining to the court of Fayette. Or if this could be embraced by the terms “ matter proper for the jurisdiction of the court,” then the bill on its face, shows a case not proper for the jurisdiction of the court of Raleigh, and so is not within the terms of the section. It was the duty of the judge who allowed the injunction, to direct his *632 order to the clerk of the Fayette court; but although he failed to do so, it was nevertheless the duty of the party to file his bill and perfect his injunction with the clerk of that court; and the court of Ealeigh should have dismissed the bill whenever the objection was made. Snhh was the decree in the case of Randolph's ex’or v. Tucker, 10 Leigh 655.
The act of December 1818, 1 Rev. Code 1819, ch. 66, § 86, p. 214, was in broader terms than the present act. It provided that after answer filed and no plea to the jurisdiction, no exception for want of jurisdiction should ever afterwards be made. Yet it was held that it only applied to those cases in which upon the face of the bill the matter thereof is not proper for relief in equity. Pollard v. Patterson, 3 Hen. and Munf. 67. Hickman v. Stout, 2 Leigh 6. But that act excepted from its operation cases of controversy respecting lands lying without the jurisdiction of such court, and also cases of infants and femes covert.
But if I am in error on this point, let us briefly consider the case made. If the original bill could be supposed to have been maintainable upon the ground (not suggested by it however as a reason for invoking the aid of a court of equity) that there had been no sitting of the Fayette court since the execution complained of issued, and that there would be none in time to enable him to prevent a levy and sale of his property by a motion to quash, yet as the material allegation of payment of the whole amount of the execution to the sheriff was directly put in issue by Palmer’s answer, and no proof offered to support it, the court could do no otherwise than dissolve the injunction. And though a levy might possibly have been made, yet no sale could have taken place under the execution before the next sitting of the Circuit court, which was to be on the 3rd of September, the injunction having been allowed on the 25th of Au *633 gust. In the amended bill filed on the dissolution of the injunction, the ground of actual payment of the money by Waite to the sheriff is virtually abandoned. It alleges that the sheriff of Fayette had levied the execution upon property sufficient to satisfy it, but had appropriated the property to his own use, or if he had sold it, had failed to account for the proceeds, and had falsely returned that it had been sold and the proceeds applied in satisfaction of other executions against Waite having priority. It also alleged that the sheriff had received a sum of three hundred and forty dollars from Waite on the sale of a negro, for which credit should have been given on the execution. He thus stated a case which showed him entitled to full redress at law by a motion in the Fayette court to quash the execution, and an action at law for a false return. How it may be questioned if all this matter could not have been proved under the allegations of the original bill; and if it could, then there was no reason why the court should have reinstated the injunction which it had just dissolved. But if they were new and original matters which could not have been proven upon the allegations of the original bill, then it was improper to reinstate the injunction upon the filing of the amended bill, because it did not and could not allege a want of full opportunity to obtain redress by setting them up in the court of law: for there had been two regular terms of the Circuit court of Fayette between the filing of the original bill and of the amended bill, commencing by law, the first on the 3rd of September 1852, and the second on the 3rd of April 1853 ; and no reason whatever was suggested in the amended bill why the party had failed to avail himself of the opportunity which they afforded. How, I apprehend a party to be entertained in a court of equity upon a case of this character, ought to allege some reason why its aid is invoked, instead of seeking *634 his remedy in the court of law. It should appear that the latter could afford him no remedy, or an -inadequate one, or that he had been deprived of the opportunity of seeking it without any default on his part, or some circumstance should be shown furnishing a reason for withdrawing the matter from the cognizance of the appropriate tribunal, and carrying it into the court of chancery. Nothing of the kind is shown here; but for aught that appears, the matter might have been as well tried and as full redress afforded in the court of law as in the court of chancery.
The case of Crawford v. Thurmond, 3 Leigh 85, is not, I think, in conflict with these views. That case involved several complicated questions of law and fact, stated in the opinion of Judge Carr, and which he thought could be better tried in the court of chancery than the law court; and there was an equitable right involved more appropriate for the jurisdiction of the former tribunal than the latter. This case presents a mere question as to the regularity and propriety of the proceeding of the officer of the law court upon an execution placed in his hands, and is very distinguishable from that just cited. It more nearly resembles the case of Morrison v. Spear, 10 Gratt. 228, in which this court was of opinion the party had improperly sought relief in the court of chancery when his redress was in the court of law.
It may be added too that all the material allegations of both the original and amended bills were denied or directly put in issue by the parties upon whom their gravamen rested, and no proof whatever was offered in support of any of them.
In every view of the case, I think the Circuit court properly refused to grant the relief sought by the bill. I think, however, before dismissing the bill, the injunction should have been formally dissolved, and in that respect that the decree should now be amended; *635 and so amended, should be affirmed with costs to the appellees.
Moncure and Samuels, Js. concurred in the opinion of Lee, J.
Allen, P. concurred in affirming the decree on the first ground stated in the opinion of Lee, J.
Daniel, J. concurred in affirming the decree.
Decree affirmed.